Nedder v. Rivier College          CV-95-116-SD  09/03/96 P

UNITED STATES DISTRICT COURT FOR THE

                          DISTRICT OF NEW HAMPSHIRE


Mary Nedder

     v.                                    Civil No. 95-116-SD

Rivier College


                              O R D E R


     In this civil action, plaintiff Mary Nedder alleges that her

former employer, Rivier College, terminated her employment as an

assistant professor of religious studies in violation of Title I

of the Americans with Disabilities Act of 1990 (ADA), Pub. L. No.

101-336, 104 Stat. 327 (codified at 42 U.S.C. §§ 12101-12117

(1995)).  Plaintiff also brings claims under New Hampshire law

for breach of her employment contract, wrongful discharge, and

violation of the New Hampshire "Law Against Discrimination", New

Hampshire Revised Statutes Annotated (RSA) 354-A (1995).

     On July 20 and 25, 1995, the court conducted an evidentiary

hearing on Nedder's motion for a preliminary injunction to

reinstate her in her position at Rivier College pending final

resolution of her action on the merits.  The court denied the

motion on August 14, 1995.  Nedder v. Rivier College, 908 F.

Supp. 66 (D.N.H. 1995).

Presently before the court is defendant's motion for summary judgment on Count I of the complaint (the ADA claim).[1] Also before the court is defendant's motion for judgment on the pleadings as to Count III (the wrongful discharge claim) and Count IV (the RSA 354-A claim). Plaintiff objects to both motions, except for defendant's motion for judgment on the pleadings as to Count IV.

## Background

The background of this case can be very briefly summarized as follows.[2] Rivier hired Nedder as a part-time faculty member in the religious studies department in 1988. Affidavit of Dr. Jacqueline C. Landry ¶ 3 (attached to defendant's motion). Nedder continued teaching on a part-time basis until 1992, at which point Rivier hired her as a full-time assistant professor of religious studies, later renewing her contract for the 1993-94 and 1994-95 academic years. Id. ¶ 4. In August 1994 Nedder

---

[1]Rivier has moved for permission to file a supplemental memorandum of law in support of its summary judgment argument. Such motion (document 26) is herewith granted, over plaintiff's objection, and has been considered along with the other pleadings before the court.

[2]A more complete statement of the evidence produced by the parties at the hearing on plaintiff's motion for preliminary injunction is contained in the court's August 14, 1995, order denying the motion. See Nedder, supra, 908 F. Supp. at 70-85.

received a letter signed by both Father Gerald Murphy, a department chair, and Dr. Landry, a faculty dean, stating that Rivier would not renew Nedder's contract for the 1995-96 academic year.  Id. ¶ 6.

Nedder is five feet six inches tall, and at all times relevant to this case she weighed approximately 375 pounds. Complaint ¶ 1.  Her physician opines, among other things, that Nedder is disabled because she is unable to walk farther than 500 yards without becoming breathless and tired, and because she feels "like she is doing something" when carrying out some of her daily activities.  Deposition of Renee Jacobs, M.D., at 27-28 (attached to plaintiff's objection).

The evidence will be further elaborated upon during the course of the court's discussion below.

## Discussion

### I.  The Motion for Summary Judgment

#### A.  Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Rule 56(c), Fed. R. Civ. P.; Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). Since the purpose of summary judgment is issue finding, not issue

3

determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

When the non-moving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case." Celotex Corp. v. Catrett,, 477 U.S. 317, 322-23 (1986). It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'" LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, supra, 477 U.S. at 256), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994). Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party." Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the non-moving party's favor. Anderson, supra, 477 U.S. at 255. Nevertheless, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory

4

allegations, improbable inferences, and unsupported speculation."
Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st
Cir. 1990) (citations omitted).


### B.  The ADA Claim

An ADA plaintiff may use circumstantial evidence to prove
his or her case by employing the familiar burden-shifting scheme
that originated in McDonnell-Douglas Corp. v. Green, 411 U.S. 792
(1973).[3]  See Braverman v. Penobscot Shoe Co., 859 F. Supp. 596,
603 (D. Me. 1994); accord Ennis v. National Ass'n of Business and
Educ. Radio, Inc., 53 F.3d 55, 57 (4th Cir. 1995).

Under McDonnell-Douglas, "plaintiffs bear the initial burden
of establishing a prima facie case of discrimination." Udo v.
Tomes, 54 F.3d 9, 12 (1st Cir. 1995).  "Once the plaintiff
establishes a prima facie case, a presumption arises that the
employer unlawfully discriminated against the plaintiff." Id. at
12.  The employer must then rebut the presumption of

---

[3]Although Nedder claims to have direct evidence of
disability discrimination, the court has not found sufficient
evidence on the record.  Direct evidence of discrimination is
"that evidence which, if believed, 'establishes discriminatory
intent or motive without inference or presumption.'"  Lewis v.
Zilog, Inc., 908 F. Supp. 931, 951 (N.D. Ga. 1995) (quoting Clark
v. Coats & Clark, Inc., 990 F.2d 1217, 1226 (11th Cir. 1993)).
"Only the most blatant remarks whose intent could only be to
discriminate constitute direct evidence."  Id.

discrimination by producing evidence "that the adverse employment actions were taken for a 'legitimate, non-discriminatory reason.'" Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (further quotation omitted)).[4]

The court has previously set forth that Nedder must show the following elements in order to make out a prima facie case of employment discrimination under the ADA: "(1) she was 'disabled' as that term is defined by the ADA; (2) she was qualified, with or without accommodation, to do her job as an assistant professor of religious studies; (3) she was discharged; and (4) she was replaced by a non-disabled person." Nedder, supra, 908 F. Supp. at 74 (citing Sherman v. Optical Imaging Sys., Inc., 843 F. Supp. 1168, 1181 (E.D. Mich. 1994)). Defendant's motion for summary judgment focuses solely on whether plaintiff has produced evidence sufficient to show that she is disabled under the ADA.

_____

[4]Once the employer meets such burden, "the plaintiff must introduce sufficient evidence to support two findings: (1) that the employer's stated reason for laying off the plaintiff is a pretext, and (2) that the true reason is discriminatory." Udo, supra, 54 F.3d at 13 (citing Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994), cert. denied, ___ U.S. ___, 115 S. Ct. 1958 (1995)). Although the McDonnell-Douglas framework shifts the burdens of production between the parties, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Hicks, supra, 509 U.S. at 507 (quoting McDonnell-Douglas, supra, 450 U.S. at 253).

6

Therefore, the court's inquiry will be limited to the first element of Nedder's prima facie case--whether she was disabled.

Title I of the ADA prohibits, inter alia, discrimination against "a qualified individual with a disability" based on such person's disability regarding a term or condition of employment. 42 U.S.C. § 12112(a).

Under the ADA,

> The term "disability" means with respect to an individual--
> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).[5]

An ADA plaintiff "must meet the threshold burden of establishing that [s]he is 'disabled' within the meaning of the statute." Roth v. Lutheran Gen. Hosp., 57 F.3d 1446, 1453-54 (7th Cir. 1995) (citations omitted). "The inquiry is an individualized one, and must be determined on a case-by-case basis." Id. at 1454 (citations omitted). In this case, the plaintiff asserts that she is disabled in fact under definition

---

[5]"Disability" as defined under the ADA is substantially equivalent to "disability" as defined under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-797 (1988 & Supp. 1995), and the court will look to case law interpreting both statutes when analyzing plaintiff's evidence of "disability". See Nedder, supra, 908 F. Supp. at 74 n.7.

(A).  In the alternative, she asserts that Rivier regarded her as disabled under definition (C).

### 1. Disability in Fact

To establish a disability in fact, plaintiff must show three elements:  (1) a physical or mental impairment (2) substantially limiting (3) a major life activity.  42 U.S.C. § 12102(2). Rivier assumes for purposes of its motion that plaintiff's morbid obesity is an impairment for purposes of the Act.[6]  The plaintiff avers that her obesity substantially limits her ability to walk and to work, both of which are characterized as "major life

---

[6]The EEOC, in regulations promulgated to implement the ADA, defines "physical or mental impairment" as:

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems:  neurological, musculoskeletal, special sense organs, [inter alia]; or
> (2) Any mental or psychological disorder . . . .

29 C.F.R. § 1630.2(h) (1995).

Ordinarily plaintiff would have to show that her obesity is of physiological origin and that it impairs a body system.  Cf. Cook v. Rhode Island Dep't of Mental Health, Retardation & Hosps., 10 F.3d 17, 23 (1st Cir. 1993) (holding that jury could plausibly have found that plaintiff had a physical impairment based on her own testimony and the testimony of an expert, who stated that her morbid obesity was the result of a physiological disorder).

activities" under the EEOC regulations.  <u>See</u> 29 C.F.R. §

1630.2(i).  Thus, the issue before the court with respect to

Nedder's actual disability claim concerns only the "substantial

limitation" element.

Plaintiff's primary argument is that she is substantially

limited in the major life activity of walking.[7]  The court has

already had occasion to examine in great detail what constitutes

a substantial limitation on the major life activity of walking,

and incorporates by reference said discussion.  <u>See</u> <u>Nedder</u>,

<u>supra</u>, 908 F. Supp. at 75-76.  To briefly summarize, a

substantial impairment is established where the individual is

"'either unable to perform, or significantly restricted as to the

condition, manner or duration under which the individual can

perform, a major life activity as compared to an average person

in the general population.'"  <u>Id.</u> at 75 (quoting <u>Roth</u>, <u>supra</u>, 57

F.3d at 1454 n.12; 29 C.F.R. § 1630(j)(1)(ii)).  Relevant to the

consideration is the nature and severity of the impairment, its

---

[7]This court has previously observed that obesity alone "does not constitute a disabling impairment" under the ADA.  <u>Nedder</u>, <u>supra</u>, 908 F. Supp. at 75-76 (collecting cases).  Instead, plaintiff's burden is to show a significant impact on a major life activity, such as her ability to walk.  Obesity is considered to be a disabling impairment only under rare circumstances.  <u>See</u> 29 C.F.R. pt. 1630, app. § 1630.2(j).

expected duration, and its expected permanent long-term impact. Id.

The regulations give the following examples to illustrate when an individual's ability to walk might be substantially limited:

> [A]n individual who, because of an impairment, can only walk for very brief periods of time would be substantially limited in the major life activity of walking. An individual who uses artificial legs would likewise be substantially limited in the major life activity of walking because the individual is unable to walk without the aid of prosthetic devices.

29 C.F.R. app. § 1630.2(j).

As a general rule, "both the regulations and the [EEOC compliance] manual make clear that comparatively moderate restrictions on the ability to walk are not disabilities." Kelly v. Drexel Univ., ___ F.3d ___, ___, 1996 WL 479503, at *4 (3d Cir. 1996). In Kelly a plaintiff suffering from severe post-traumatic degenerative joint disease of the right hip stated that he could not walk more than a mile or so, could not jog, and had to pace himself slowly when climbing stairs. In addition, plaintiff's treating physician opined that plaintiff had "great difficulty in walking around." Id. at *3. In affirming the district court's grant of summary judgment, the appeals court found that while it was difficult to draw "bright line"

10

distinctions, the plaintiff was not substantially limited in his ability to walk.  Id. at *7.

Similarly, in Stone v. Entergy Servs., No. 94-3669, 1995 WL 368473 (E.D. La. June 20, 1995), a plaintiff with partial paralysis, muscle weakness, and uneven legs as residual effects of polio testified that he had limited endurance, experienced difficulty climbing stairs, and walked significantly slower than the average person.  Despite this and other evidence, the court concluded that plaintiff's ability to walk was not substantially limited.  Id. at *3-4; cf. Graver v. National Eng'g Co., No. 94 C 1228, 1995 WL 443944 (N.D. Ill. July 25, 1995) (plaintiff suffering from arthritis in ankles causing significant pain when walking and pronounced limp was not disabled).

To support its position that Nedder is not substantially limited in her ability to walk, Rivier submits the following portion of Nedder's deposition.

> Q:  Okay.  And aside from the endurance factor that you've described, are there any other difficulties with walking?
> A:  No.
> . . . .
> Q.  Okay.  And does that -- if you pace yourself, are you able to walk as far as you need to carry on your daily life?
> A.  Yes.

Deposition of Mary Nedder at 27, 110.

Rivier also relies on testimony from the preliminary injunction hearing of one of Nedder's colleagues who stated that although Nedder walks more slowly than he does, he had once witnessed Nedder walk several blocks on a very hot and humid evening.  See Testimony of Prof. Leo Sandy, Hearing Transcript, July 20, 1995, at 26.  In addition, Rivier submits the testimony of Nedder's physician, who opined that Nedder is capable of walking 500 yards comfortably, depending on the temperature.  Jacobs Deposition, supra, at 26.

Plaintiff responds with additional testimony of Dr. Jacobs.

> Q:  Does Ms. Nedder suffer from a disability, Doctor?
> A:  Where ambulation is concerned, definitely.
> Q:  Can you give me a -- in legal cases lawyers and doctors sometimes talk about percentages --
> A:  Um-hmm.
> Q:  -- of disability
> A:  Um-hmm.
>    . . . .
> Q:  Okay.  Can you tell me what percentage of disability Ms. Nedder suffers from?
> A:  I would ballpark -- I would guess, if she's going to try to do her work, her housework, go shopping, go in and out of a car, my opinion would be at least a 50 percent.
> Q:  And are you basing that solely on the walking or --
> A:  Uhm, getting in and out of a car; anything that involves activity.  Bending over to tie your shoes.
> Q:  But she's able to complete those tasks?
> A:  Right.  She's able to complete that, certainly, but it is with exertion and with feeling, uhm, that she is doing something.

12

> Whereas, if you or I would bend over to tie our
> shoes, we wouldn't think anything about it.

Jacobs Deposition, supra, at 27-28.

Nedder also maintains that three incidents occurring during her employment at Rivier show that her obesity substantially limited her ability to walk: (1) she was unable to complete a procession during a convocation ceremony in the fall of 1993; (2) she could not fully participate in the 1994 commencement exercises because she was concerned that she would not be able to walk the distances required in the exercises; and (3) she was unable to use her office during a two-week period in February 1994 in the aftermath of a fall on the ice outside of the office. As to the third incident, she testified that she had difficulty in getting up after the fall because of her weight, and that her fear of another falling incident caused her to be unable to go to her office for two weeks.[8]

Even when the evidence is considered in a light most amiable to Nedder, her ability to walk is, at most, moderately impaired.

---

[8]The court in its August 14, 1995, order dealt extensively with each of these incidents in the context of the likelihood of plaintiff's success on the merits of her case. In the preliminary injunction context, these three events were cited as evidence of Rivier's alleged discriminatory animus toward plaintiff. See Nedder, supra, 908 F. Supp. at 80-81. As these events are now raised in the context of summary judgment as evidence of plaintiff's actual disability, the court will analyze these incidents anew.

13

Her own testimony, and that of her physician, indicates she can walk, albeit with considerable exertion and not as swiftly as the average person. In addition, she is capable of walking for more than "very brief periods of time," and has not argued that she needs an assistive device such as a cane or crutch to help her walk.

Moreover, none of the three incidents create a genuine issue as to whether Nedder is substantially limited in her ability to walk, as they show, at most, that Nedder was only moderately impaired. For example, Nedder's refusal to use her office in the winter of 1994 because she feared she might fall on the icy ground does not present an issue of material fact. Plaintiff's testimony about the incident reveals that she does not usually walk on ice because she does not "have good mobility on ice." Hearing Transcript, July 25, 1995, at 19-20. Nedder is no different in this respect than the average person. See 29 C.F.R. § 1630, app. § 1630.2(j) ("An individual is not substantially limited in a major life activity if the limitation . . . does not amount to a significant restriction when compared with the abilities of the average person.").

Accordingly, the court concludes that Nedder has failed to present sufficient evidence to show that she is disabled with respect to the activity of walking.

14

The court must next decide whether the plaintiff has produced evidence from which a trier of fact could find that she is disabled in her ability to work.[9]

To be considered substantially limited in the major life activity of working, an ADA plaintiff must present evidence of being "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  29 C.F.R. § 1630.2(j)(3)(i).  However, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  Id.[10]

---

[9]The appendix to 29 C.F.R. § 1630 provides, "If an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered."

[10]Supplementing the factors listed in 29 C.F.R. § 1630(j)(2), the following

> may be considered in determining whether an individual is substantially limited in the major life activity of "working":
>   (A) The geographical area to which the individual has reasonable access;
>   (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

With these considerations in mind, the court turns to whether Nedder has produced evidence sufficient to support a finding that her obesity significantly restricts her ability to work.

At the hearing, plaintiff testified as follows:

> Q:  Prior to your employment at Rivier College part-time, was weight ever an issue for you in your employment?
> A:  No.
> Q:  Did your weight ever interfere with you[r] being able to carry out your job?
> A:  I always had to make accommodation, but once I made the accommodation, I could do my job.
> Q:  You were always able to do your job?
> A:  Yes.
> Q:  And you were able to do all the duties of your job at Rivier College without any requested accommodation from the college?
> A:  Other than the walking in the processions, yes.

Hearing Transcript, July 25, 1995, at 71-72.  In addition, when questioned by the court, plaintiff stated that her weight had

---

> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

16

never interfered with her preparation and actual teaching of her classes.  Id. at 76-77.

Plaintiff's undisputed testimony is that she was able to perform her job.  Although plaintiff's obesity may have affected her work on two occasions when she could not walk in faculty processions, such evidence shows at most that Nedder was unable to perform one aspect of her job.  Since she retained the ability to perform her work in general, plaintiff has failed to show that her obesity substantially limited her ability to work.  See Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727 (5th Cir. 1995) ("[T]he inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working.") (citation omitted).  The court therefore finds and herewith rules that the plaintiff has failed to produce evidence sufficient to show that she is substantially limited with respect to working.

Given that plaintiff has not submitted sufficient evidence to support that she was actually disabled (with respect to either walking or working), the court now addresses plaintiff's second theory of disability under the ADA:  that she was regarded by Rivier College as suffering from a disability.

17

## 2.  Perceived Disability

Nedder argues in the alternative that even if she is not actually disabled, she meets the statutory definition of disability under the ADA because Rivier regarded her as having a substantially limiting impairment.  See 42 U.S.C. § 12102(2)(C). Under the EEOC regulations, "an individual who has an impairment that is not substantially limiting (or has no impairment at all) is nevertheless 'disabled' if he is treated by the employer as having an impairment that does substantially limit major life activities."  Katz v. City Metal Co., 87 F.3d 26, 32 (1st Cir. 1996); 29 C.F.R. § 1630.2(l)(1).  Thus, an individual who is otherwise not disabled may be handicapped by another's "myths, fears and stereotypes" about disabilities.  29 C.F.R. § 1630, app. § 1630.2(l).

Given that the court has already found that Nedder's obesity is not a substantial impairment, Nedder must do more than merely show that her employer perceived her condition.  Instead, "the perceived impairment must substantially limit a major life activity."  Marschand v. Norfolk & Western Ry., 876 F. Supp. 1528, 1540 (N.D. Ind. 1995), aff'd on other grounds, 81 F.3d 714 (7th Cir. 1996); cf. Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319-20 (8th Cir. 1996) (employer who simply

18

perceived otherwise nondisabling medical problems did not regard plaintiff as disabled).

In addition, with respect to working, an employer does not regard an employee as disabled because "it believes she is incapable of performing a particular job." Ellison v. Software Spectrum, Inc., 85 F.3d 187, 192 (5th Cir. 1996). Rather, the employer must perceive "'the employee's impairment to foreclose generally the type of employment involved.'" Id. at 192 (quoting Forrisi v. Bowen, 794 F.2d 931, 935 (4th Cir. 1986)).

The following excerpt from this court's previous order summarizes some of the evidence presented at the injunction hearing relevant to what Sister Jeanne Perreault, president of Rivier, thought about overweight people:[11]

> Camille MacKnight [an employee of Rivier], attended [a] faculty meeting and recalled . . . that Sister Jeanne spoke of the need "to educate the whole body, the mind, the soul and the body." Ms. MacKnight further testified that the statement about the body, as she heard it, "was that you may need to exercise or lose weight," and when Ms. MacKnight heard this she thought . . . about Mary Nedder. Ms. MacKnight also recalled Sister Jeanne's making similar comments at a subsequent staff meeting and adding that faculty and staff must set examples on campus for students.
> Patrice O'Donnell, Associate Professor of Psychology and Chair of Rivier's Behavioral Sciences Department, was also present at the . . .

---

[11]This evidence was previously considered in the context of a separate issue.

> faculty meeting.  Professor O'Donnell testified that Sister Jeanne related a story from several years prior about a graduation speaker named Commodore Hopper who had commented to her that "there are a lot of fat people on this campus." According to Professor O'Donnell, Sister Jeanne used this story anecdotally and went on to discuss the importance of educating the whole person and of faculty and staff being role models both in and out of the classroom.
>
> Brother Paul Demers, Rivier's chaplain and campus minister, also attended the faculty meeting and recalled in his testimony that Sister Jeanne's comments were made in the context of the importance of taking "a holistic approach" to the education of one's mind, spirit, heart, and body. Brother Paul further testified that he <u>"think[s] there was a statement made by Sister Jeanne about being careful of one's weight, being overweight in a sense is an indication of lack of discipline and is or can be perceived in a negative way, and we owe [it] to ourselves to attend to all aspects of our being--body, mind, and spirit."</u>

<u>Nedder</u>, <u>supra</u>, 908 F. Supp. at 82 (emphasis added).

In addition, Nedder offered testimony at the preliminary injunction hearing about a meeting between her and Dr. Landry. When she mentioned to Dr. Landry that she had gained a few extra pounds, Landry encouraged her in her attempt to lose it.  Hearing Transcript, July 25, 1995, at 16.  Dr. Landry then told plaintiff she was thinking about sending over an article sent to her by Sister Jeanne which "talked about the traditional . . . student's response to overweight faculty, and that in this article it said that . . . traditionally students perceived overweight faculty as being less disciplined and less intelligent."  <u>Id.</u>  Dr. Landry

20

testified that the article was a preliminary report which concluded that "traditionally students react negatively to obese teachers." Id. at 50-51.

On the basis of the foregoing, a trier of fact could find that Sister Jeanne and Dr. Landry, each of whom participated in the decision to not renew Nedder's contract,[12] perceived plaintiff's obesity as substantially limiting her ability to teach. Specifically, a jury could find that Sister Jeanne and Dr. Landry believed that obese teachers are perceived by students as less disciplined and less intelligent and as making unsuitable role models. A jury also could find that Sister Jeanne and Dr. Landry may have regarded Nedder as substantially limited in her ability to teach, either in the narrow class of jobs of a religious studies professor or in the broader range of any teaching position. Accordingly, viewing the evidence in a light most favorable to Nedder, as the court must, the court finds that a genuine issue of material fact exists as to whether Rivier, because of arcane stereotyping, perceived Nedder to be substantially limited in her ability to work. Cf. Katz, supra,

_____

[12]Perreault's hearing testimony indicates that Father Murphy, as chair of Nedder's department, initiated the decision not to renew her contract. This recommendation was approved by Dr. Landry, vice president for academic affairs, and then by Sister Jeanne, president of the college. Hearing Transcript, July 25, 1995, at 14.

21

87 F.3d at 32-33 (perceived disability claim under ADA survives summary judgment where employer who had knowledge of heart condition observed plaintiff's inability to climb stairs and also knew plaintiff would initially have to work at limited capacity); Cook, supra note 5, 10 F.3d at 25 (employer's belief that plaintiff's morbid obesity would interfere with her ability to work was, for summary judgment purposes, sufficient to sustain "regarded as" claim);[13] Holihan v. Lucky Stores, Inc., 87 F.3d 362, 366 (9th Cir. 1996) (entry of summary judgment improper where employer discussed employee's aberrant behavior with him, asked him if he had any "problems", and had knowledge of diagnosis of depression).

To summarize, the court finds that plaintiff has failed to present evidence sufficient to prove that she is disabled in fact under the ADA. Therefore, she has failed to make out a prima facie case of employment discrimination on the basis of an actual disability. Genuine issues of material fact exist, however, as to Nedder's claim that she was regarded as disabled in her ability to work as a teacher. Accordingly, defendant Rivier College's motion for summary judgment is granted with respect to

---

[13]In Cook, the court was applying section 504 of the Rehabilitation Act of 1973, which is interpreted in nearly the same fashion as the ADA. See Katz, supra, 87 F.3d at 31.

Nedder's actual disability claim under 42 U.S.C. § 12102(2)(A), and denied with respect to Nedder's perceived disability claim under 42 U.S.C. § 12102(2)(C).

## II.  Motion for Judgment on the Pleadings

In addition to moving for summary judgment on plaintiff's ADA claim, Rivier moves, pursuant to Rule 12(c), Fed. R. Civ. P., for judgment on the pleadings on Counts III (wrongful discharge) and IV (RSA 354-A) of the complaint.  Nedder objects only as to Count III.[14]

### A.  Judgment on the Pleadings Standard

Rule 12(c), Fed. R. Civ. P., provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  "The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule 12(b)(6) motion."  <u>Metromedia Steakhouses Co. v. Resco</u>

_____

[14]Plaintiff raises no objection to Rivier's motion for judgment on the pleadings on Count IV, the claim under RSA 354-A. This court has held that the plain language of RSA 354-A reveals that the statute does not create a private right of action. <u>Tsetseranos v. Tech Prototype, Inc.</u>, 893 F. Supp. 109, 120 (D.N.H. 1995).  Accordingly, Count IV of plaintiff's complaint is dismissed.

Management, Inc., 168 B.R. 483, 485 (D.N.H. 1994) (citation omitted). "In reviewing the defendant's motion for judgment on the pleadings . . . the court must accept all of the factual averments contained in the complaint as true, and draw every reasonable inference helpful to the plaintiff's cause." Sinclair v. Brill, 815 F. Supp. 44, 46 (D.N.H. 1993) (citations omitted). Judgment on the pleadings will not be granted, however, "'"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."'" Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) (quoting George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 553 (2d Cir. 1977) (quoting Conley v. Gibson, 355 U.S. 42, 45-46 (1957))).

B. Plaintiff's Wrongful Discharge Claim

Defendant challenges plaintiff's claim that she was wrongfully discharged under New Hampshire law on the basis of her disability.

To bring a valid wrongful discharge claim under New Hampshire law, "the plaintiff must show:  'one, that the employer terminated the employment out of bad faith, malice or retaliation; and two, that the employer terminated the employment because the employee performed acts which public policy would

24

encourage or because he refused to perform acts which public policy would condemn.'" Wenners v. Great State Beverages, Inc., 140 N.H. 100, 103, 663 A.2d 623, 625 (1995), cert. denied, ___ U.S. ___, 116 S. Ct. 926 (1996) (quoting Short v. School Admin. Unit No. 16, 136 N.H. 76, 84, 612 A.2d 364, 370 (1992)).

However, "a plaintiff may not pursue a common law remedy where the legislature intended to replace it with a statutory cause of action." Id. (citing Howard v. Dorr Woolen Co., 120 N.H. 295, 297, 414 A.2d 1273, 1274 (1980); Thompson v. Forest, 136 N.H. 215, 216, 614 A.2d 1064, 1065 (1992)).

Following Wenners, the First Circuit has held that a wrongful discharge claim based on pregnancy discrimination was precluded because Title VII "not only codifies the policy against gender-based discrimination . . . but also creates a private right of action to remedy violations of that policy and limns a mature procedure for pursuing such an action." Smith v. F.W. Morse & Co., 76 F.3d 413, 429 (1st Cir. 1996). The situation in this case is closely analogous. The ADA codifies the public policy against discrimination on the basis of disability, creates a private right of action to remedy violations of that policy, and limns a procedure for pursuing such action. Therefore, the court concludes that Nedder's wrongful discharge claim is precluded because of the availability of a remedy under the ADA.

25

Accordingly, defendant Rivier College's motion for judgment on the pleadings with respect to Count III is granted.

## Conclusion

For the reasons set forth herein, (1) defendant Rivier College's motion to file supplemental memorandum of law (document 26) is granted; (2) defendant Rivier College's motion for summary judgment on Count I (document 17) is granted with respect to plaintiff's claim that she is disabled in fact under the ADA and denied as to plaintiff's claim that she was regarded as disabled by Rivier College; and (3) defendant Rivier  College's motion for judgment on the pleadings (document 18) is granted as to Counts III and IV.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

September 3, 1996

cc:  Paul McEachern, Esq.
     Daniel P. Schwarz, Esq.