Stephen FURTICK, Individually and as Father and Next Friend of Sahnita Furtick, Veronica Furtick, and Crystal Furtick, Plaintiffs,

v.

MEDFORD HOUSING AUTHORITY, United States Department of Housing and Urban Development, and Andrew M. Cuomo, in his Official Capacity as Secretary for the Department of Housing and Urban Development, Defendants.

Civil Action No. 95–12283–WGY.

United States District Court,
D. Massachusetts.

May 6, 1997.

David H. Gibbs, Peabody & Brown, Boston, MA, for plaintiffs.

John L. Greco, Medford Housing Authority, Medford, MA, Michael Sitcov, Dept. of Justice, Civil Division, Washington, DC, for Medford Housing Authority.

Colleen B. Grzeskowiak, Federal Programs Branch, Civil Division, DOJ, Washington, DC, Michael Sitcov, Shirley Wang, Dept. of Justice, Civil Div., Washington, DC, for U.S. Dept. of Housing and Urban Development, Henry Cisneros.

### *MEMORANDUM AND ORDER*

YOUNG, District Judge.

Stephen Furtick and his three children, Sanhita, Veronica, and Crystal (the "Furticks"), commenced this action against the Medford Housing Authority (the "Authority"), the Department of Housing and Urban Development ("HUD"), and the present secretary of HUD, Andrew M. Cuomo ("Cuomo"), in his official capacity.[1] The Furticks claim that the defendants' policies, practices,

---

**1.** The suit originally named Henry G. Cisneros, but the defendants have substituted Cuomo pursuant to Fed.R.Civ.P. 25(d)(1).

and procedures have created and perpetuated racial discrimination within the federal Section 8 Existing Housing Program.[2] Specifically, the Furticks allege that 1) the residency preference used by the Authority in distributing Section 8 vouchers has a disparate impact on African–Americans because the majority of Medford residents are white; 2) HUD has failed to fulfill its constitutional and statutory obligations to monitor the criteria used by the Authority to determine who may receive a Section 8 voucher; and 3) Cuomo breached his duty to ensure HUD's compliance with the law.[3] The Furticks seek declaratory and injunctive relief,[4] monetary damages,[5] attorneys' fees, and costs against all defendants.

Cuomo and HUD have moved for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c).[6] They contend that 1) the Furticks lack standing to pursue their claims for injunctive and declaratory relief; 2) the Furticks may not pursue their claims for monetary damages under the United States Housing Act, 42 U.S.C. §§ 1437, 1441, and 1441a, because those provisions do not confer a private right of action; and 3) all of the Furticks' claims for monetary damages are barred by sovereign immunity.

## I. BACKGROUND

Under the Section 8 Existing Housing Program, HUD authorizes local public housing authorities ("PHA's") to issue federally-funded vouchers to eligible low income families. 42 U.S.C. § 1437f(b). A Section 8 voucher entitles a family to have the PHA pay a portion of its rent directly to its landlord, provided that the landlord meets certain eligibility requirements. *Id.* Under HUD's supervision, the PHA's determine which applicants receive the vouchers and which privately-owned residences meet the eligibility criteria for leasing to qualified applicants. 42 U.S.C. § 1437f(c), (*o*).[7]

To obtain a Section 8 voucher, an eligible family must apply directly to a PRA such as the Authority. 42 U.S.C. § 1437f. The PHA then places the family on a waiting list according to the date of application and certain selection preferences. Some of these prefer-

2. "Section 8" refers to a section of the revised United States Housing Act of 1937, codified at 42 U.S.C. § 1437 *et seq.*, authorizing a number of distinct programs designed to further the goal of providing decent, safe, and sanitary housing for low-income citizens. See 42 U.S.C. § 1437; *Williams v. Hanover Hous. Auth.*, 871 F.Supp. 527, 529 (D.Mass.1994). This case ·pertains to the Section 8 Existing Housing Program. See 42 U.S.C. § 1437f(b).

3. The Furticks assert claims against Cuomo and HUD pursuant to the Fair Housing Act, 42 U.S.C. §§ 3604, 3608 (Count I); the Administrative Procedure Act, 5 U.S.C. § 702 (Count II); the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982 (Counts III, IV); the Fifth Amendment (Count VI); Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Count VII); and the United States Housing Act, 42 U.S.C. §§ 1437, 1441, and 1441a (Count VIII).

4. The Furticks seek a declaratory judgment that the residency preference violates federal and state law and the Constitution, and ask this Court to enter permanent injunctive relief ordering 1) the defendants to cease the racially discriminatory policies that allegedly undergird the residency preferences, 2) Cuomo and HUD to condition funding of Section 8 housing programs on the elimination of such residency preferences, 3) HUD to carry out its fair housing obligations as dictated by federal and state law, 4) Cuomo and HUD to make a full accounting of its investiga-

tion and adjudication of the Furticks' administrative complaint, and 5) Cuomo and HUD to properly investigate the Furticks' claims pursuant to HUD's own regulations. Complaint ("Compl.") at 18–19.

5. The Furticks seek to recover an unspecified amount of damages for "economic loss, denial of access to educational and employment opportunities, their suffering humiliation of racial discrimination, emotional distress, and for the denial of social and psychological advantages of living in an integrated community." Compl. at 19.

6. The Authority is not a party to this motion. The Furticks assert claims against the Authority pursuant to the Fair Housing Act, 42 U.S.C. § 3604, 3608 (Count I); 42 U.S.C. §§ 1981, 1982, and 1983 (Counts III–V); 42 U.S.C. § 2000d (Count VII); the Fourteenth Amendment (Count IX); the Massachusetts Equal Rights Act, Mass. Gen. L. ch. 93 § 102 (Count X); and the Massachusetts Antidiscrimination Statute, Mass. Gen. L. ch. 151B (Count XI).

7. A Section 8 voucher is not linked to a particular rental unit. Once a family obtains a voucher, it must then find a private landlord who meets the necessary eligibility requirements and is willing to participate in the program. *See* 42 U.S.C. § 1437f.

ences, known as "federal preferences," are statutorily mandated (*e.g.*, preferences for families who have been involuntarily displaced and are homeless, families who live in substandard housing, and families that pay more than fifty percent of their income for rent). 42 U.S.C. § 1437f(*o*)(3)(B). "Non-federal preferences," in contrast, are those preferences which are proposed by a local PHA and, if approved by HUD, incorporated into the PHA's administrative plan. *Id.;* 24 C.F.R. § 982.207. The residency preference at issue in this case is an example of a non-federal preference.

On October 20, 1992, Stephen Furtick, on behalf of himself and two of his daughters,[8] submitted an application to the Authority for a Section 8 voucher.[9] On January 11, 1993, the Authority placed the Furticks' application on the waiting list for two-bedroom apartments. At that time, the Authority ranked applicants on its waiting list in the following order: 1) residents of Medford who qualify for a federal preference; 2) non-residents who qualify for a federal preference; 3) residents of Medford who do not qualify for a federal preference; and 4) non-residents who do not qualify for a federal preference. At the time of their application, the Furticks qualified for a federal preference but did not live in Medford, and thus were placed in the second category.

On September 28, 1993, the Furticks filed an administrative complaint with HUD, claiming that the Authority's residency preference discriminated against them on the basis of race in violation of the Fair Housing Act, 42 U.S.C. §§ 3601–3619. On April 11, 1995, HUD issued a Determination of Reasonable Cause and Charge of Discrimination against the Authority. HUD found that 1) whites constituted 72% of the Authority's applicant pool and received 89% of the vouchers, while African–Americans constituted 17% of the applicant pool but received only 9% of the available vouchers, and 2) the residency preference used by the Authority

accounts for this racially disproportionate allocation of Section 8 benefits. But on July 25, 1995, HUD withdrew its Determination of Reasonable Cause and Charge of Discrimination, and in August, 1995, HUD dismissed the Furticks' administrative complaint.

The Furticks lived in homeless shelters and transitional housing in the Greater Boston area from August, 1992 until July, 1995, when they received a voucher from another public housing authority and secured a residence with that voucher. On October 18, 1995, the Furticks filed suit in this Court.

## II. DISCUSSION

■ A motion for judgment on the pleadings tests the legal sufficiency of the complaint, not the plaintiffs' likelihood of ultimate success. "The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as the standard for evaluating a Rule (12)(b)(6) motion." *Nedder v. Rivier College,* 944 F.Supp. 111, 120 (D.N.H.1996) (quoting *Metromedia Steakhouses Co. v. Resco Management Inc.,* 168 B.R. 483, 485 [D.N.H.1994]). A court may grant a dismissal on the pleadings "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.'" *Gaskell,* 3 F.3d at 497–98 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 [1957]).

### A. *Standing for Declaratory and Injunctive Relief*

Under the Constitution, a federal court has but limited jurisdiction and can hear only disputes that raise an actual "case or controversy" between the parties before it. U.S. Const. art. 3, § 2; *see Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The standing requirement that arises from this language in Article III ensures that cases "will be presented

---

**8.** Crystal Furtick, the youngest daughter, was born after the submission of the application.

**9.** In ruling on a motion for judgment on the pleadings, this Court must take the material facts as alleged in the Complaint as true and view them in the light most favorable to the plaintiffs.

*Gaskell v. Harvard Cooperative Soc'y,* 3 F.3d 495, 497 (1st Cir.1993) (citing *International Paper Co. v. Town of Jay,* 928 F.2d 480, 482 [1st Cir. 1991]). The facts recited herein are taken from the Furticks' Complaint.

in an adversary context and in a form historically viewed as capable of judicial resolution." *Flast v. Cohen,* 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968). "It is for that reason that the emphasis in standing problems is on whether the party invoking federal court jurisdiction has 'a personal stake in the outcome of the controversy.'" *Id.* (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 [1962]).

A plaintiff satisfies the constitutional requirements for standing when she alleges a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324 (citation omitted); *see also Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville,* 508 U.S. 656, 663–64, 113 S.Ct. 2297, 2301–02, 124 L.Ed.2d 586 (1993). "The responsibility for 'clearly and specifically setting forth facts sufficient to satisfy the Article III standing requirements' rests with the claimant." *Adams v. Watson,* 10 F.3d at 915, 919 (1st Cir.1993) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 [1990]).[10]

■ Cuomo and HUD argue that the Furticks lack standing to pursue their claims for declaratory and injunctive relief.[11] The Furticks already possess a Section 8 voucher— albeit one obtained from another housing authority—and thus are free to live anywhere in the Commonwealth, including Medford. *See Williams v. Hanover Hous. Auth.,* 926 F.Supp. 10, 12–13 (D.Mass.1996) (citing *Williams v. Hanover Hous. Auth.,* 871 F.Supp. 527, 534 [D.Mass.1991]) (noting that housing agencies agreed to accept prior ruling by this Court that policy of restricting where recipients of Section 8 vouchers may live violates state law).[12] Accordingly, any order issued by this Court requiring HUD to prohibit the use of residency preferences in the application process for Section 8 vouchers would not redress harms presently being suffered by the Furticks. As the Supreme Court reiterated in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.* at 564, 112 S.Ct. at 2138 (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 [1974]).

■ The Furticks counter that even though they already possess a Section 8 voucher, they stand to benefit from the equitable relief sought because there is a possibility that they will lose their current section 8 voucher, apply for a new voucher with the Authority, and again be subject to the residency preference. The Constitution, however, requires more than the mere possibility that the Furticks will be injured in the future. The plaintiffs must allege facts that indicate a "real or immediate threat that [they] will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'" *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983) (quoting *O'Shea,* 414 U.S. at 502, 94 S.Ct. at 679); *see also Lujan,* 504 U.S. at 564, 112 S.Ct. at 2138 (threat of future injury must be "imminent"). In *Lyons,* the Supreme Court held that the possibility that the plaintiff would again be stopped by a police officer and subjected to the chokehold he sought to enjoin was too speculative to confer standing. *Id.* at 105, 111, 103 S.Ct. at 1666–67, 1670; *see also American Postal Workers Union v. Frank,* 968 F.2d 1373, 1377 (1st Cir.1992) (current union members lack standing to challenge Postal Service pol-

---

**10.** The interest required of a litigant to attain standing is essentially the same as the interest required to maintain a claim under the mootness doctrine. *See United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L.J. 1363, 1384 [1973]) ("The requisite personal interest that must exist at the commencement of the litigation [standing] must continue throughout its existence [mootness].") (bracketed language in original).

**11.** *See supra* note 4.

**12.** As a result, the Furticks have no need for a second voucher. Furthermore, HUD regulations prevent them from obtaining one. 24 C.F.R. § 882.118(b).

icy of drug testing job applicants because, as current employees, the plaintiffs do not face "a realistic risk of future exposure" to the testing).[13] By the same token, here, the possibility that the Furticks will again be subject to the residency preference is "far too speculative," *see Frank,* 968 F.2d at 1376, to confer standing.[14]

The Furticks also assert that the continued use of the residency preference by the Authority perpetuates racially segregated housing patterns and denies them the "benefits of living in a racially integrated society." Plaintiffs' Opposition to Federal Defendants' Motion to Dismiss at 6; *see generally* Charles M. Haar, *Suburbs Under Seige: Race, Space, and Audacious Judges* 3–8, 200–08 (1996). The Supreme Court, however, has long recognized that this type of "generalized grievance" is insufficient to confer standing. *See Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216–27, 94 S.Ct. 2925, 2929–35, 41 L.Ed.2d 706 (1974); *Lujan,* 504 U.S. at 575, 112 S.Ct. at 2144 (quoting *Ex parte Levitt,* 302 U.S. 633, 634, 58 S.Ct. 1, 1, 82 L.Ed. 493 [1937]) ("It is an established principle . . . 'that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained or is immediately in danger of sustaining a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public.' "). As the Furticks already possess a

Section 8 voucher permitting them to live anywhere in the Commonwealth, the only direct, non-generalized harm asserted in the Complaint—the alleged discrimination in the application process for Section 8 vouchers—no longer impacts the Furticks in any way that this Court might redress through equitable relief. The Furticks' rights are to be free of invidious discrimination, not to reorder society more to their liking. However desirable might be the Furticks' ultimate goal, it is difficult to see what order this Court could enter that would affect their current living arrangements.

■ The Furticks have, however, pled another injury in fact which might conceivably form a basis for standing—HUD's alleged mishandling of the investigation and adjudication of their administrative complaint. The Administrative Procedure Act provides that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702; *see also N.A.A.C.P. v. Secretary of Hous. & Urban Dev.,* 817 F.2d 149, 152 (1st Cir.1987). In order to maintain a claim pursuant to the Administrative Procedure Act, however, a plaintiff must satisfy the Article III requirements for standing. *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976) (citing *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 152, 90 S.Ct. 827,

---

**13.** *Cf. Northeastern Fla. Chapter,* 508 U.S. at 666, 113 S.Ct. at 2303 (association of contractors had standing to challenge an affirmative action plan because it had shown that members of association were "able and ready to bid on contracts" still open for bidding); *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, ——, 115 S.Ct. 2097, 2105, 132 L.Ed.2d 158 (1995) (construction firm has standing to challenge affirmative action plan because contracts under plan were likely to be issued again and firm is likely to bid on those contracts again).

**14.** The "capable of repetition, yet evading review" exception to the normal constitutional requirements for standing, *see Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973), is also inapplicable here. That exception requires 1) that "the activity being challenged [is], by its nature, [ ] of such short duration that it is unlikely to be fully litigated before its cessation

or expiration," and 2) "a reasonable expectation that the same complaining party will be subjected to the same acts again." *Dionne v. Bouley,* 757 F.2d 1344, 1348 (1st Cir.1985) (citing *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348–49, 46 L.Ed.2d 350 [1975]). The Furticks' claims do not satisfy either prong. First, unlike pregnancy, the operation of the residency preference is not of such short duration that an applicant will inevitably receive a Section 8 voucher before her claim can be litigated fully. Second, the Furticks already possess a Section 8 voucher, so there is no reason to expect they will again be subject to the residency preference.

Nor can the Furticks successfully argue that HUD or the Authority has been "deceptively kind," *see Griffith v. Bowen,* 678 F.Supp. 942, 946 (D.Mass.1988), in providing them with a Section 8 voucher. The Furticks received their current voucher from a local housing authority that is not a party to this action.

829, 25 L.Ed.2d 184 [1970] ). Although "[t]here is no question that a 'procedural injury' can constitute an injury in fact for the purpose of establishing standing," such a procedural injury must also "impair a separate concrete interest." *Yesler Terrace Community Council v. Cisneros*, 37 F.3d 442, 446 (9th Cir.1994) (citing *Lujan*, 504 U.S. at 572, 112 S.Ct. at 2142–43). Here, that interest is absent because he Furticks already possess a portable Section 8 voucher. As the Furticks have failed to demonstrate an injury likely to be redressed by declaratory or injunctive relief, any exercise of jurisdiction by this Court "would be gratuitous, and thus inconsistent with the Art[icle] III limitation." *Simon*, 426 U.S. at 38, 96 S.Ct. at 1924.[15]

**B.** *The Furticks' Claims for Monetary Damages*

**1.** *The United States Housing Act Claims*

In Count VIII of the Complaint, the Furticks aver that Cuomo and HUD,

by failing to administer the Section 8–Existing Housing Program in Medford in a manner which insures decent affordable housing and equal housing opportunities to all Americans, and by failing to eradicate racial segregation in the Section 8 rental housing program in Medford, have violated federal housing policy established by the United States Housing Act of 1937, 42 U.S.C. §§ 1437, 1441, and 1441a.

Compl. ¶ 66. Cuomo and HUD argue that sections 1437, 1441, and 1441a do not confer a private right of action to support the Furticks' claims for monetary damages.[16] The Furticks respond that although these provisions do not expressly provide for a private right of action, one may properly be implied.[17]

▪ The Supreme Court has articulated a four-part inquiry to determine if a statute implies a private right of action: 1) whether the plaintiff is a member of the class for whose "especial benefit" the statute was enacted; 2) whether there is any indication of legislative intent to create or deny the remedy sought; 3) whether an implied remedy would be "consistent with the underlying purposes" of the statutory scheme; and 4) whether "the cause of action [is] one traditionally relegated to state law" such that it would be inappropriate to imply a federal remedy. *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted). The second factor, however, is of primary importance. *See Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988) (holding that the other *Cort* factors are useful only as "guides to discerning [Congressional] intent"). Fur-

---

**15.** Furthermore, if this Court were to construe the Administrative Procedure Act to confer standing even in the absence of a redressable injury, the United States would be subject to potential liability for attorneys' fees in cases such as the one at bar, *see* 28 U.S.C. § 2412(d)(1)(A) (the "Equal Access to Justice Act"), and the private bar could become a band of private attorneys general enforcing procedural niceties in a vacuum. Congress did not intend this result.

**16.** Title 42 U.S.C. § 1437 declares that is the policy of the nation "to promote the general welfare ... by employing its funds and credit ... to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income...."

Title 42 U.S.C. § 1441 provides that it is the policy of the nation to "remedy the serious housing shortage ... through the clearance of slums and blighted areas, and the realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family...."

Title 42 U.S.C. § 1441a states that the goal of "a decent home and suitable living environment for every American family" has not been realized, that such a goal is hereby affirmed and that it should be achieved within the next decade through the addition of 26,000,000 housing units, that policies designed for the achievement of this goal "have not directed sufficient attention and resources to the preservation of existing housing and neighborhoods," and that a greater effort is needed for the preservation of existing housing and neighborhoods.

**17.** In a Supplemental Memorandum requested by the Court on the issue of whether the Furticks are entitled to an implied private right of action, the Furticks contend that Cuomo and HUD have violated the United States Housing Act in its entirety. In their Complaint, however, the Furticks specifically allege that Cuomo and HUD violated the policies established in 42 U.S.C. §§ 1437, 1441, and 1441a. Accordingly, this Court will look to those provisions only in determining whether the Furticks have a private right of action under the United States Housing Act.

thermore, in assessing these factors, there is a presumption against an implied right of action. *Stowell v. Ives,* 976 F.2d 65, 70 n. 5 (1st Cir.1992); *see also Sterling Suffolk Racecourse Ltd. Partnership v. Burrillville Racing Ass'n,* 989 F.2d 1266, 1271 (1st Cir.), *cert. den.,* 510 U.S. 1024, 114 S.Ct. 634, 126 L.Ed.2d 593 (1993) ("a statutory provision phrased as a command to specific people is unlikely to breed an implied private right of action because such language usually evinces a congressional concern with instructing the putative violator rather than with providing a remedy to the putative victim").

■■■ Applying these principles, this Court holds that although low income families in need of affordable housing are intended beneficiaries of sections 1437, 1441, and 1441a, *see Falzarano v. United States,* 607 F.2d 506, 509 (1st Cir.1979), these provisions contain only broad declarations of housing policy which Congress did not intend be transferred into a private right of action for monetary damages. "[U]nless congressional intent to allow the private right of action 'can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" *Royal Bus. Group, Inc. v. Realist, Inc.,* 933 F.2d 1056, 1060 (1st Cir.1991) (quoting *Thompson,* 484 U.S. at 179, 108 S.Ct. at 516).

Other courts that have examined the language, structure, and legislative history of sections 1437, 1441, and 1441a have similarly concluded that Congress did not intend to create a private right of action. *See Perry v. Housing Auth. of Charleston,* 664 F.2d 1210, 1216–17 (4th Cir.1981) (no private right of action under sections 1437, 1441, and 1441a); *Cedar–Riverside Assocs., Inc. v. City of Minneapolis,* 606 F.2d 254, 257–59 (8th Cir.1979) (no private right of action under sections 1441 and 1441a); *Edwards v. District of Columbia,* 628 F.Supp. 333, 340 (D.D.C.1985), *aff'd,* 821 F.2d 651 (D.C.Cir.1987) (no private right of action under section 1437); *West Zion Highlands v. City of Zion,* 549 F.Supp. 673, 676 (N.D.Ill.1982) (no private right of action under section 1441); *Thompson v. Binghamton Hous. Auth.,* 546 F.Supp. 1158, 1181–83 (N.D.N.Y.1982) (no private right of action under section 1437).[18]

### 2. Sovereign Immunity for the Remaining Damage Claims

■■■ The Furticks also seek to recover monetary damages from Cuomo and HUD for their alleged violations of 42 U.S.C. §§ 1981 and 1982, 42 U.S.C. S § 3604 and 3608, 42 U.S.C. § 2000d *et seq.,* and the Fifth Amendment. Cuomo and HUD contend that all of these remaining claims are barred under the doctrine of sovereign immunity.[19]

**18.** The Furticks rely upon *Wright v. City of Roanoke Redevelopment & Hous. Auth.,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), to argue that Congress intended to authorize private enforcement of the United States Housing Act. In that case, the Supreme Court held that 42 U.S.C. § 1437a—a section not at issue here—creates rights which may be enforced against a local housing authority via 42 U.S.C. § 1983. *Wright,* 479 U.S. at 432, 107 S.Ct. at 774–75. The standard for determining whether a plaintiff may enforce a statute against state and local officials via section 1983, however, is far less stringent than what is required to establish an implied private right of action. *See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 21, 101 S.Ct. 2615, 2627, 69 L.Ed.2d 435 (1981). In contrast to the general presumption against finding an implied private right of action within a statute, *see Stowell,* 976 F.2d at 70 n. 5, Congress is "presumed to legislate against the background of section 1983 and thus to contemplate private enforcement of the relevant statute against state and municipal actors absent fairly discernible congressional intent to

the contrary." *Samuels v. District of Columbia,* 770 F.2d 184, 194 (D.C.Cir.1985). *Wright,* therefore, is inapposite.

**19.** Relying upon the Tucker Act, 28 U.S.C. § 1491(a)(1), Cuomo and HUD also assert that this Court lacks subject matter jurisdiction over the Furticks' claims for monetary damages because—assuming the Furticks seek to recover more than $10,000, *see* 28 U.S.C. § 1346(a)(2)—these claims fall within the scope of the exclusive jurisdiction of the Court of Federal Claims. The Tucker Act, however, establishes jurisdiction in the Court of Federal Claims only over those claims "not sounding in tort." 28 U.S.C. § 1491(a)(1); *cf. Commonwealth v. Departmental Grant Appeals Bd.,* 815 F.2d 778, 786 (1st Cir.1987) (citations omitted) (no Tucker Act jurisdiction where plaintiff does not 1) allege the existence of an express or implied contract, or 2) seek the return of money she has paid over to the Government or for the payment of money to which she is entitled by law). As all of the claims asserted by the Furticks, *see supra* note 3, do sound in tort, they are properly before this

The Furticks counter that the United States has waived its sovereign immunity with respect to these claims.

A waiver of sovereign immunity must be "unequivocally expressed in [the] statutory text." *Lane v. Pena,* —— U.S. ——, ——, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996) (citing *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33–34, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 [1992] ). "To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Id.* at ——–——, 116 S.Ct. at 2096–97 (citation omitted). Such a waiver will not be implied and will be strictly construed in favor of the sovereign. *Id.* at ——, 116 S.Ct. at 2096 (citation omitted).[20]

In arguing that the United States has waived its sovereign immunity with respect to all of their claims for monetary damages, the Furticks rely *exclusively* upon 42 U.S.C. § 1404a. That provision, however, merely provides that "[t]he Secretary of [HUD] may sue and be sued only with respect to its functions under the United States Housing Act of 1937, as amended [42 U.S.C. § 1437, *et seq.*]." [21] As Section 1404a does not "unequivocally express" an intent to extend this waiver to claims alleging violations of other housing acts or more generalized civil rights statutes, this Court holds that the Furticks' remaining claims for monetary damages are barred by sovereign immunity.[22]

## III. CONCLUSION

For the foregoing reasons, the motion of Cuomo and HUD for judgment on the pleadings is hereby **GRANTED** in its entirety.

---

Court rather than the Court of Federal Claims. *See Doe v. Attorney General,* 941 F.2d 780, 784–85 (9th Cir.1991), *rev'd on other grounds,* —— U.S. ——, 116 S.Ct. 2543, 135 L.Ed.2d 1064 (1996) (after claims for equitable relief had been dismissed, claims for monetary damages under Section 504 of the Rehabilitation Act and section 42 U.S.C. § 1981 could stand for trial because both sounded in tort).

**20.** "Since the advent of [*Nordic Village*], the Court not only requires the traditional clear statement of a waiver of sovereign immunity but steadfastly refuses to consider the legislative history of a statute, no matter how opaque the statutory language or crystalline the history." *Lane,* —— U.S. at ——, 116 S.Ct. at 2105 (Stevens, J., joined by Breyer, J., dissenting).

**21.** 42 U.S.C. § 1404a does not indicate that Congress intended to create a private right of action with respect to any particular provision of the United States Housing Act, but rather that Congress intended to waive its sovereign immunity as to those provisions for which a cause of action exists. *See Howard v. Pierce,* 738 F.2d 722, 727–28 (6th Cir.1984).

**22.** The Furticks cite *Baker v. F & F Inv. Co.,* 489 F.2d 829, 833–34 (7th Cir.1973) for the proposition that their claims under the civil rights statutes fall within the scope of the waiver contained in 42 U.S.C. § 1404a. In *Baker,* the Seventh Circuit held that 5 U.S.C. § 702, which contains a "sue and be sued" waiver provision closely analogous to 42 U.S.C. § 1404a, extends to claims brought against the Secretary of HUD under 42 U.S.C. §§ 1981 and 1982.

This Court finds *Baker* unpersuasive. First, *Baker* was decided prior to the Supreme Court's pronouncement in *Nordic Village,* 503 U.S. at 33–34, 112 S.Ct. at 1014–15, that a waiver of sovereign immunity for monetary damages must be clear and unambiguous. Second, even before *Nordic Village,* several other courts that considered the issue held that the waiver provision contained in 42 U.S.C. § 1404a does not extend to claims under civil rights statutes such as 42 U.S.C. §§ 1981 and 1982. *See, e.g., Selden Apartments v. United States Dep't of Hous. & Urban Dev.,* 785 F.2d 152, 158 (6th Cir.1986); *U.S. v. Yonkers Board of Educ.,* 594 F.Supp. 466, 473 (S.D.N.Y.1984).